UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID McNEES,

                Petitioner,                          Hon. Janet T. Neff

v.                                               Case No. 1:12-CV-528

BONITA HOFFNER,

                Respondent.

_____/


**REPORT AND RECOMMENDATION**

        This matter is before the Court on McNees' petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that McNees' petition be **denied**.


**BACKGROUND**

        As a result of events which occurred between 2002-2005, Petitioner was charged with: (1) first degree criminal sexual conduct; (2) second degree criminal sexual conduct; and (3) third degree child abuse. (Trial Transcript, April 1, 2008, 10). Several individuals testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

1

**Danielle Burchette**

Burchette had been a friend of Amber Hunt's family for 28 years.  (Trial Transcript, April 1, 2008, 68).  Burchette recalled that sometime in 2003, Amber had suffered an injury to her face.  (Tr. 71).  Specifically, Burchette observed a "very distinguishable" hand print on the left side of Amber's face.  (Tr. 71).  Burchette also recalled an incident in 2005 where she witnessed Petitioner slap Amber "in the face."  (Tr. 79).  Amber and her two brothers lived with Burchette "off and on" for several years.  (Tr. 74-75).  Burchette indicated that Amber was presently residing with her and had been doing so for approximately nine months.  (Tr. 68-71).

**Charles Dewyer**

Dewyer testified that he was presently engaged to Danielle Burchette.  (Trial Transcript, April 1, 2008, 84).  Dewyer had known Petitioner since he was a young boy.  (Tr. 84).  Dewyer recalled speaking with Petitioner in 2007 about his treatment of Amber Hunt.  (Tr. 85).  Petitioner acknowledged to Dewyer that "he went a little beyond his boundaries and had smacked her and left a mark."  (Tr. 85-86).  At some unspecified period of time, Petitioner resided with Dewyer.  (Tr. 87).  During this time, Dewyer once witnessed Petitioner "whipping" Amber with a belt.  (Tr. 87).

**Cathy Jacobs**

Jacobs is Petitioner's sister.  (Trial Transcript, April 1, 2008, 89-90).  Jacobs recalled a time where Amber Hunt lived with her for "about a week and a half."  (Tr. 91).  This occurred because Petitioner "got upset with [Amber] and slapped her so hard in the face it left a hand print

2

on her face." (Tr. 91).  Following this incident, Petitioner asked Jacobs to take Amber in because Petitioner did not want Amber to attend school until her injuries were less visible because "he was afraid they'd call protective services on him." (Tr. 91).  Jacobs recalled "several occasions" in which Petitioner threatened to harm his children.  (Tr. 95-96).  Jacobs indicated that Amber's mother, Corunna Hunt, "has been out of [her] life" for at least 4-5 years.  (Tr. 69, 92).  Amber never said anything to Jacobs about Petitioner "touching her inappropriately in a sexual manner." (Tr. 93).

**William George**

George testified that he had known Petitioner and Amber Hunt for 15 years.  (Trial Transcript, April 1, 2008, 101).  George witnessed Petitioner "grab" his children and tell them things such as "you better stop or I'll knock your teeth out," but he never observed Petitioner "actually beat" his children.  (Tr. 102).

**Amy Miner**

Miner had known Petitioner and Amber Hunt for 5-6 years.  (Trial Transcript, April 1, 2008, 106-07).  She recalled an incident where Amber suffered a "hand print bruise" to her face after which Amber stayed with Cathy Jacobs.  (Tr. 108-09).

**Ericka Cox**

Cox was a long time friend of Amber Hunt.  (Trial Transcript, April 1, 2008, 113-14).  Cox recalled an incident years before in which she and Amber got caught lying to their parents about what they were going to be doing one particular evening.  (Tr. 114).  Cox was unsure what

3

punishment Amber received, but Cox noted that following this incident Amber was absent from school for "about a week and a half." (Tr. 114-15).

**Brandon McNees**

McNees is Amber Hunt's brother. (Trial Transcript, April 1, 2008, 122-23). McNees witnessed Petitioner hit Amber only once. (Tr. 125). Petitioner struck Amber in the face after which Amber stayed with Cathy Jacobs for "a week and a half." (Tr. 125).

**David McNees**

McNees is Amber Hunt's brother. (Trial Transcript, April 1, 2008, 130). McNees witnessed Petitioner "physically assault" Amber by spanking her as well as striking her "across the face." (Tr. 131-32). McNees was also aware of a separate incident in which Petitioner struck Amber in the face after which Amber stayed with Cathy Jacobs for a week and a half. (Tr. 131-32).

**Candice George**

At the time of Petitioner's trial, George was 22 years of age. (Trial Transcript, April 1, 2008, 136). When she was younger, George babysat Amber Hunt and her two brothers. (Tr. 136-37). When George was 14 years of age, she was sexually assaulted by Petitioner. (Tr. 139). Specifically, Petitioner penetrated George with "both sex toys and his body parts." (Tr. 139-41). George reported this to the police, but it "got dropped." (Tr. 140).

4

**Amber Hunt**

Amber Hunt is Petitioner's daughter.  (Trial Transcript, April 1, 2008, 143).  Amber indicated that she was presently seventeen years old and was living with her "Aunt Danny and Uncle Chuck."  (Tr. 143, 147).  Amber recalled that when she was younger there was "lots of violence" between Petitioner and her mother.  (Tr. 177-78).  When Amber was approximately ten years old, her parents "split" and her mother moved out.  (Tr. 146-47).  Amber and her brothers continued living with Petitioner.  (Tr. 146-49).  Shortly thereafter, Petitioner began sexually abusing Amber. (Tr. 149-50).  Amber testified that Petitioner "would come into my room and he would pull my covers off me and grope my boobs and stuff."  (Tr. 149-50).  Petitioner engaged in this conduct "once in awhile."  (Tr. 150).  Amber testified that Petitioner later began inserting his fingers into her "crotch."  (Tr. 150-52).  Amber reported that she "can't even count" the number of times Petitioner abused her in this manner.  (Tr. 152).  Petitioner continued abusing Amber until she was "about fifteen" years of age.  (Tr. 149-52).  Specifically, Petitioner stopped abusing Amber when he began a relationship with "an adult" woman with whom he began living  (Tr. 149-53).  Amber was born in December 1990, thus Petitioner's abuse spanned the years 2000-2005.  (Tr. 143, 149-53).

Amber eventually reported Petitioner's conduct to a counselor as well as Danielle Burchette.  (Tr. 153).  Amber was "scared" to report this to anybody because she was "scared of" Petitioner.  (Tr. 153-54).  In this respect, Amber recalled an incident in which Petitioner struck her in the face so hard that it "left a hand print on my face from my neck to my cheek."  (Tr. 154-55). As a result of this incident, Amber stayed with her Aunt Cathy for one week during which time she did not attend school.  (Tr. 155-56).  Amber testified that Petitioner hit her "a lot."  (Tr. 157).

**Shawn Smith**

Smith's maiden name was Shawn Hunt. (Trial Transcript, April 1, 2008, 179). Smith is a sister to Corunna Hunt, Amber Hunt's mother. (Trial Transcript, April 1, 2008, 179-80). Several years previously, Petitioner and Corunna Hunt were living with Smith's family. (Tr. 181). During this time, Petitioner began sexually assaulting Smith by "touching" her breasts. (Tr. 182). After this occurred "five or six times," Smith "had had enough of it and called the police." (Tr. 182-84). As a result, a Personal Protective Order was enter prohibiting Petitioner to come within 50 feet of Smith. (Tr. 182-83).

**Tammy Ramos**

Ramos is a sister to Shawn Smith and Corunna Hunt. (Trial Transcript, April 1, 2008, 186, 189). Ramos recalled that several years before, when Ramos was between the ages of 11-15, Petitioner would "get me high and then he would want to have sex with me." (Tr. 188-89). Ramos reported Plaintiff's behavior to her sister, Corunna, but she "was in love with" Petitioner and did not believe her. (Tr. 190).

**Scott Ernstes**

Ernstes had been employed for the past eight years as a trooper with the Michigan State Police. (Trial Transcript, April 1, 2008, 195). Ernstes participated in the investigation of the allegations against Petitioner. (Tr. 195-98). As part of the investigtion, Ernstes spoke with Danielle Burchette who reported "two separate instances of assault against Amber that she had known about." (Tr. 198-99). Ernstes also spoke with Petitioner. (Tr. 199). When asked about a previous incident

6

involving Shawn Smith, Petitioner said "they were mistakes, even calling it bull shit at one point." (Tr. 201).  Petitioner also denied having "any sexual contact with" his daughter.  (Tr. 201).

**Thomas Cottrell**

Cottrell was employed as the vice president of counseling services at the West Central Michigan YWCA located in Grand Rapids.  (Trial Transcript, April 2, 2008, 3-4).  Cottrell was permitted to testify as an expert "in the field of child sexual abuse treatment."  (Tr. 4-7).  Cottrell testified that "it is more typical than not" for a child victim of sexual abuse to "delay" reporting such. (Tr. 8).  Cottrell indicated that there exist "a whole variety of reasons" why a child might delay reporting sexual abuse.  (Tr. 8-12).  Cottrell indicated that if a child reports such abuse,  "it would be the extraordinary case" if the child were able to "provide either emotionally or cognitively good, logical descriptions in regards to time and places and the complete event surrounding the sexual abuse," especially "where there's ongoing sexual abuse for years." (Tr. 12).  Cottrell further reported that it was "not unusual at all" for a child victim of sexual abuse to engage in "delinquent behavior." (Tr. 14).

**Dawn Rayborn**

For a period of time in 2005-2006, Petitioner and his children lived with Rayborn. (Trial Transcript, April 2, 2008, 20-21).  During this time, Amber Hunt "got in trouble" for "sneaking out" of the house and "stealing and doing all kinds of stuff to get in trouble at school." (Tr. 22).  Rayborn did not witness Petitioner abusing his children, although she conceded that Petitioner "yelled a lot" and employed corporal punishment with his children.  (Tr. 22, 24-25).

Amber never mentioned to Rayborn that she had been abused.  (Tr. 23).  Rayborn also did not "see any signs" that Amber had been sexually abused.  (Tr. 23).

**David McNees**

Petitioner and Corunna Hunt lived together from 1988 until March 2002.  (Trial Transcript, April 2, 2008, 30-31).  In March 2002, Plaintiff was charged with domestic violence.  (Tr. 32-33).  Petitioner pleaded guilty to this charge after which Petitioner's children went to live with their mother.  (Tr. 32-33).  In April 2003, Petitioner's children returned to Petitioner's care.  (Tr. 33-36).  Petitioner experienced "difficulties" with Amber as a result of her behavior.  (Tr. 40).  Petitioner denied ever striking Amber on the face.  (Tr. 40-41).  Petitioner also denied sexually assaulting or touching Amber sexually.  (Tr. 41).  Petitioner also denied sexually assaulting Shawn Smith, Tammy Ramos, or Candice George.  (Tr. 43, 47-48, 51).

Following the presentation of evidence, the jury found Petitioner guilty of (1) first degree criminal sexual conduct; (2) second degree criminal sexual conduct; and (3) third degree child abuse.  (Trial Transcript, April 2, 2008, 92-93).  Petitioner was sentenced to serve 19 ½ - 50 years on the first degree criminal sexual conduct conviction and lesser terms of imprisonment on the other convictions.  (Sentencing Transcript, June 20, 2008, 14).  Petitioner appealed his conviction to the Michigan Court of Appeals asserting the following claims:

> I.      The trial court violated Appellant's due process rights by admitting unfairly prejudicial evidence of an uncharged, alleged other act with a different individual involving criminal sexual conduct.
>
> II.     Defendant was denied a fair trial by the prosecutor's misconduct in using a prior conviction as evidence of

his bad character and his guilt of the instant offense that was not included in the motion to admit other bad acts.

III.    Defense trial counsel was constitutionally ineffective in failing to object to inadmissible and unfairly prejudicial evidence of Appellant's prior conviction or timely move for a mistrial.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. McNees*, 2009 WL 4981147 (Mich. Ct. App., Dec. 22, 2009).   Asserting the same issues, Petitioner unsuccessfully moved in the Michigan Supreme Court for leave to appeal. *People v. McNees*, Case No. 140428, Order (Mich., Apr. 27, 2010).  Petitioner subsequently moved in the trial court for relief from judgment asserting the following claims:

I.    The criminal sexual conduct 1st degree and criminal sexual conduct 2nd degree conviction was neither supported by the weight of the evidence, nor by legally sufficient evidence, to prove beyond a reasonable doubt that Mr. McNees was guilty.

II.    Mr. McNees was denied his constitutional right to be proceeded against under an information which with a fair degree of certainty specifies particular charges made against him and which fixes scope of the prosecution.

III.    The prosecutor denied Mr. McNees a fair trial by vouching for the credibility of the witnesses, misstating the evidence, by going outside the scope of the case and soliciting sympathy by stating Amber Hunt was a special education student.

IV.    Mr. McNees was denied his right to a defense and his right to the effective assistance of counsel by his attorney's failure to obtain an expert in sexual abuse.

V.    The trial court abused its discretion by scoring O.V. 10 and O.V. 13 by sentencing Mr. McNees based on

9

facts that were never found by a jury beyond a reasonable doubt.

VI.     The trial court abused its discretion in denying Mr. McNees request to sever the first degree criminal sexual conduct and second degree criminal sexual conduct from the third degree child abuse this was severely prejudicial to Mr. McNees.

VII.    Mr. McNees was denied his state and federal right to the effective assistance of counsel on appeal due to appellate counsel's failure to raise a claim of ineffective assistance of trial counsel in addition to the issues raised herein.

The trial court denied Petitioner's motion.  *People v. McNees*, Case No. 07-15493-FC, Order (Cir. Ct. Allegan Cnty., Dec. 13, 2010).[1]  Asserting the same seven claims identified immediately above, Petitioner moved in the Michigan Court of Appeals for leave to appeal. Petitioner's request was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. McNees*, Case No. 304252, Order (Mich. Ct. App., June 28, 2011). Petitioner's subsequent motion in the Michigan Supreme Court for leave to appeal was denied because Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. McNees*, Case No. 143435, Order (Mich., Mar. 5, 2012).  Asserting the ten issues identified above, Petitioner initiated the present action on May 23, 2012.

## STANDARD OF REVIEW

McNees's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.  The AEDPA amended the

---

[1]  This decision is contained within docket entry #20.

substantive standards for granting habeas relief under the following provisions:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The

*Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

12

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not

addressed by the state courts).

# ANALYSIS

## I.        Claims Raised on Direct Appeal

### A.        Other Bad Acts Evidence

As noted above, Candice George testified that several years previously, she had been sexually assaulted by Petitioner.  Petitioner argues that his right to a fair trial was violated by the trial court's decision to allow George to testify about her allegations.  Respondent asserts that this claim has been procedurally defaulted precluding its review by this Court.

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address a petitioner's claims because of a failure to satisfy state procedural requirements. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  Where a petitioner's claims have been procedurally defaulted, the state court judgment rests on an independent and adequate state ground precluding review by a federal court.  *See Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).  If a claim has been procedurally defaulted, federal habeas review is available only if the petitioner can establish either (1) the existence of cause for his default and actual prejudice resulting therefrom, or (2) that the failure to consider the merits of the claim will result in a fundamental miscarriage of justice.  *See Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004) (citing *Coleman*, 501 U.S. at 750).

The Sixth Circuit employs a multi-part test to determine if a petitioner has procedurally defaulted a particular issue: (1) there must exist a state procedural rule that is applicable to the claim and with which the petitioner failed to comply; (2) the last state court rendering a

judgment in the matter must have actually enforced the state procedural rule; (3) application of the procedural rule in question must constitute an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) the petitioner cannot demonstrate cause and prejudice excusing the default. *See Tolliver v. Sheets*, 594 F.3d 900, 928 n.11 (6th Cir. 2010).

The Michigan Court of Appeals found that this particular issue was "unpreserved" because Petitioner failed to properly object at trial. *McNees*, 2009 WL 4981147 at *1. The court nevertheless reviewed the issue for "plain error." *Id.* The Sixth Circuit has held that Michigan's contemporaneous objection rule is "firmly established and regularly followed" and, therefore, "serves as an adequate and independent state ground" sufficient to preclude federal review. *See, e.g., Allen v. Harry*, 497 Fed. Appx. 473, 479 n.6 (6th. Cir., Aug. 29, 2012) (citing *Taylor v. McKee*, 649 F.3d 446, 450-51 (6th Cir. 2011)). Moreover, the fact that the Michigan Court of Appeals reviewed the claim in question for "plain error" does not excuse Petitioner's failure to comply with Michigan's contemporaneous objection rule. *See, e.g., Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010) (en banc) ("a state appellate court's plain-error review of a procedurally defaulted claim does not waive the procedural default"). Thus, Petitioner has procedurally defaulted this particular claim unless he can demonstrate either (1) cause for his default and prejudice resulting therefrom, or (2) that failure to consider the merits of the claim will result in a fundamental miscarriage of justice. The Court need not wrestle with the question whether Petitioner can overcome his procedural default, however, as this claim is simply without merit.

Generally, errors by a state court on matters involving the admission or exclusion of evidence are not cognizable in a federal habeas proceeding. *See Bugh v. Mitchell*, 329 F.3d 496, 512

15

(6th Cir. 2003). Habeas relief is warranted, however, if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). This requires Petitioner to demonstrate "actual prejudice" resulting from a constitutional error. *Clemmons*, 34 F.3d at 357.

To establish constitutional error, Petitioner cannot simply argue that the trial court's evidentiary ruling was improper, as "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, Petitioner must establish that his conviction violated the Constitution, laws, or treaties of the United States. *Id.* In this respect, it is recognized that "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh*, 329 F.3d at 512; *see also*, *Norris v. Schotten*, 146 F.3d 314, 328-29 (6th Cir. 1998) (citing *Estelle*, 502 U.S. at 67-68).

Fundamental fairness does not "require a perfect trial," *Clemmons*, 34 F.3d at 358, and, moreover, courts have defined those violations which violate fundamental fairness "very narrowly." *Bugh*, 329 F.3d at 512. State court evidentiary rulings do not offend due process unless they violate "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* As is well recognized, however, the United States Supreme Court has never held that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. *Bugh*, 329 F.3d at 512-13 ("there is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence"); *Burger v. Prelesnik*, 826 F.Supp.2d 997, 1010-11 (E.D. Mich. 2011) (same). As noted above, in the absence of Supreme Court authority holding that the admission of evidence of prior bad acts violates the Constitution, laws, or treaties of the United States, Petitioner

is not entitled to habeas relief. *Bugh*, 329 F.3d at 512-13. Accordingly, this claim raises no issue upon which habeas relief may be granted.

### B.   Prosecutorial Misconduct

On the first day of trial, Shawn Smith testified that several years previously Petitioner sexually assaulted her after which she contacted the police. The following day, Petitioner was questioned, on cross-examination, by the prosecuting attorney. During this questioning, the following exchange occurred:

Q   Shawn Hunt, you know Shawn.

A   Yeah.

Q   Did you sexually abuse her?

A   No, I did not.

Q   Did you assault her?

A   Yes, I did.

Q   How did you assault her?

A   I pushed her.

Q   You pushed her?

A   Yup.

Q   When did you push her?

A   The day in question.

Q   What day was that?

A   The day she made the report out. I don't know dates.

Q      You don't know dates?  You just gave us a very long rendition of dates.

A      That was in a short period of time.

Q      What year?

A      '93

Q      1993.

A      Yes.

Q      How do you remember the year?

A      You usually remember the year you get your first, when you get your first case brought up, it's not hard to remember.

Q      So there was a case?

A      Well, yeah.

Q      What kind of case?

A      It started out to be CSC.

Q      What does CSC stand for?

A      Criminal Sexual Conduct.

Q      How did it end up?

A      Simple assault.

Q      Is that a plea agreement?

A      Yes, it was.

(Trial Transcript, April 2, 2008, 43-44).

Petitioner asserts that the prosecutor engaged in misconduct by questioning him "regarding prior bad acts - specifically a conviction of assault regarding Shawn Hunt Smith."

18

Respondent asserts that Petitioner has procedurally defaulted this claim precluding its review by this Court.  The Michigan Court of Appeals observed that Petitioner "failed to raise this prosecutorial misconduct issue at trial, and therefore, review of his claim is precluded unless a timely objection and curative instruction could not have remedied any error, or failure to review this issue would result in a miscarriage of justice." *McNees*, 2009 WL 4981147 at *2.  Thus, it appears that Petitioner has procedurally defaulted this claim.  Again, the Court need not address the procedural default issue, as this claim is clearly without merit.

When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due process analysis...is the fairness of the trial, not the culpability of the prosecutor." *Cockream v. Jones*, 382 Fed. Appx. 479, 484 (6th Cir., June 29, 2010) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  The issue is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *see also*, *Givens v. Yukins*, 2000 WL 1828484 at *6 (6th Cir., Dec. 5, 2000) ("[t]he aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused") (quoting *Phillips*, 455 U.S. at 219).  Thus, even if the challenged conduct was improper, habeas relief is available only where the conduct was "so flagrant as to render the entire trial fundamentally unfair." *Gillard*, 445 F.3d at 897.

When assessing whether alleged prosecutorial misconduct warrants relief, the Court undertakes a two part analysis.  The Court must first determine whether "the prosecutor's conduct and remarks were improper." *Girts v. Yanai*, 501 F.3d 743, 758-59 (6th Cir. 2007).  If such is the case, the Court must then determine "whether the impropriety was flagrant and thus warrants

reversal." *Id.* at 759.  When assessing whether an improper comment resulted in a denial of the right to a fair trial, the Court considers the following factors: (1) the likelihood that the conduct mislead the jury or prejudiced the accused; (2) whether the conduct was extensive or isolated; (3) whether the conduct was deliberately or accidentally presented to the jury; and (4) whether the evidence against the accused was substantial.  *Id.*

With respect to whether the prosecuting attorney engaged in misconduct, the Michigan Court of Appeals recognized that Petitioner opened the door to questioning on this matter "when he introduced the topic of his 'first case' and volunteered specifically that the case began as a 'CSC,' instead of merely responding that it was an assault case."  *People v. McNees*, Case No. 286462, Opinion at 3-4 (Mich. Ct. App., Dec. 22, 2009).   It hardly constitutes prosecutorial misconduct for a prosecuting attorney to question Petitioner about a matter which he initiated.  *See, e.g., Turner v. Roberts*, 234 Fed. Appx. 867, 871 (10th Cir., May 18, 2007) (where defendant "opened the door" to a particular line of questioning, it was appropriate for the prosecuting attorney to pursue such and "[s]uch usual trial practice cannot be considered prosecutorial misconduct"); *Benton v. Booker*, 403 Fed. Appx. 984, 985 (6th Cir., Dec. 15, 2010) (no prosecutorial misconduct where the prosecuting attorney commented on a matter to which defendant had previously "opened the door").  As for whether the comments in question denied Petitioner of the right to a fair trial, the Michigan Court of Appeals concluded that "the challenged testimony had no affect on the outcome of trial."  *McNees*, Case No. 286462, Opinion at 3-4.  The Michigan Court of Appeals rejected this claim, concluding as follows:

> We conclude that although defendant's assault conviction was not admissible under MRE 609, there was no error requiring reversal under the circumstances.  Defendant testified after [Shawn Smith]

20

testified and offered evidence that defendant sexually assaulted her. Defendant denied sexually assaulting [Smith] but admitted to pushing her. On cross-examination, defendant was asked when the incident occurred and he stated the year of the incident involving [Smith]. When asked how he remembered the year, he stated "[y]ou usually remember the year. . .you get your first case brought up, it's not hard to remember." Defendant thus introduced the fact that there was a case. When the prosecutor asked what type of case, defendant volunteered that it "started out to be CSC." The prosecutor then sought further clarification of his testimony, and defendant revealed that he pleaded guilty to assault. The trial court did not abuse its discretion in determining that defendant opened the door to the prosecutor's line of questioning. And, the prosecutor reasonably followed up on the volunteered statement to clarify what defendant meant by "CSC." Even if we were to conclude to the contrary, defendant has failed to demonstrate the existence of outcome determinative plain error. The fact that he was only convicted of assault instead of CSC actually supported his testimony that he did not sexually assault [Shawn Smith] and impaired [Smith's] credibility that defendant touched her breasts. And, evidence of the alleged sexual assault of [Smith] was squarely before the jury before the challenged testimony.

Based on the record, we find no indication that the prosecutor attempted to admit evidence of defendant's prior conviction or initial CSC charge in bad faith. Rather, the record reflects that the prosecutor pursued the line of questioning because she believed that defendant "opened the door" to such questioning when he introduced the topic of his "first case" and volunteered specifically that the case began as a "CSC," instead of merely responding that it was an assault case. On the record, defendant has failed to demonstrate bad faith, and where the challenged testimony had no affect on the outcome of trial, he has failed to demonstrate plain error requiring reversal.

Moreover, contrary to defendant's assertion, the prosecutor never improperly argued that defendant was guilty of the charged offenses because of his propensity to commit crimes. Defense counsel brought up the assault conviction in his closing argument, and the prosecutor's arguments regarding the other-acts evidence of sexual incidents with teenage victims, such as [Candice Graham], were proper given that such evidence was admissible under MCL 768.27a and the prosecutor was simply calling on the jury to evaluate all of the evidence when deciding defendant's guilt.

*McNees*, Case No. 286462, Opinion at 3-4 (internal citations omitted).

In light of the authority discussed above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

### C.    Ineffective Assistance of Trial Counsel

Petitioner argues that his trial counsel rendered ineffective assistance by "failing to object to the testimony of Shawn Hunt Smith regarding allegations that [Petitioner] touched her when she was approximately 15 years old."  Petitioner further argues that his attorney failed to request a mistrial in response to Smith's testimony.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom.  *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111 (2009)).  To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).  A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689).  Petitioner's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance.  Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).  The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690).  This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).  In the sentencing context, Petitioner must specifically demonstrate that "his sentence was increased by the deficient performance of his attorney."  *Spencer v. Booker*, 254 Fed. Appx. 520, 525 (6th Cir., Nov. 14, 2007).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one."  *Premo*, 131 S.Ct. at 740.  Likewise, the standard by which petitions for habeas relief are judged is "highly deferential."  Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential.  *Id.* (citations omitted).  As the *Premo* Court stated:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

23

*Id.* (internal citations omitted).

Petitioner's argument is premised on his assertion that Smith's testimony was inadmissible character or bad acts evidence and, as such, should have prompted appropriate action by his attorney.  At the time of Petitioner's trial, Michigan law provided that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."  Mich. Comp. Laws § 768.27a.  The prosecuting attorney was required, however, to "disclose the evidence to the defendant at least 15 days before the scheduled date of trial. . .including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered."  *Id.*

As the Michigan Court of Appeals recognized, Smith's allegations against Petitioner would have constituted second degree criminal sexual conduct which is a listed offense under § 768.27a.  *McNees*, Case No. 286462, Opinion at 4-5.  Moreover, the prosecuting attorney provided Petitioner with timely notice of the content of Smith's testimony and the intent to introduce such. (Dkt. #18).[2]  Thus, Smith's testimony was admissible under Michigan law.  Because Smith's testimony was admissible, Petitioner's counsel could not have been ineffective for failing to object to such.  Likewise, counsel was not ineffective for failing to request a mistrial based upon the admission of Smith's testimony.

The Michigan Court of Appeals denied this claim concluding that "[b]ecause this evidence was properly admissible, defense counsel did not render ineffective assistance by failing to object to its admission or by failing to move for a mistrial after it was admitted because such an

---

[2]  The pleading in question consists of the last three pages of docket entry #18.

objection or motion would have been meritless." *McNees*, Case No. 286462, Opinion at 5 (internal citations omitted).   In light of the authority discussed above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law.   Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.   Accordingly, this claim raises no issue upon which habeas relief may be granted.

## II.          Claims Raised in Post-Conviction Motion for Relief from Judgemnt

As noted above, Petitioner's remaining claims were not presented on direct appeal, but were instead advanced for the first time in Petitioner's post-conviction motion for relief from judgment advanced in the trial court.   Respondent asserts that Petitioner's failure to present these particular claims on direct appeal compels the conclusion that such are procedurally defaulted precluding their review in this forum.   The Court is not persuaded.

In denying Petitioner's post-conviction motion for relief from judgment, the trial court addressed in detail Petitioner's various claims.   The Michigan Court of Appeals and the Michigan Supreme Court both declined to review the trial court's ruling on the ground that Petitioner did not "meet the burden of establishing entitlement to relief under MCR 6.508(D)."   Controlling authority in the Sixth Circuit used to hold that denial of leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constituted a sufficient determination that the court's conclusion was based on procedural default thereby precluding federal habeas review. *See, e.g., Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002).

As the Sixth Circuit subsequently concluded, however, such form orders are no longer sufficient to establish that a petitioner has procedurally defaulted the claim in question. *See Guilmette v. Howes*, 624 F.3d 286, 288-92 (6th Cir. 2010) (en banc). Instead, the Court must look to the "last reasoned state court opinion" to determine whether a particular claim has been denied on the merits or for failure to comply with a state procedural requirement. *Id.* at 291. Here, the "last reasoned state court opinion," is the decision by the trial judge denying Petitioner's motion for relief from judgment. *People v. McNees*, Case No. 07-15493-FC, Order (Cir. Ct. Allegan Cnty., Dec. 13, 2010).[3] The Court finds, therefore, that Petitioner's remaining claims have not been procedurally defaulted. Accordingly, the merits of such claims are examined below.

### A.    Sufficiency of the Evidence

Petitioner asserts that he is entitled to relief because there did not exist sufficient evidence to convict him of first degree criminal sexual conduct or second degree criminal sexual conduct. The Court is not persuaded.

Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *See O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing

---

[3] The Court recognizes that the decision denying Petitioner's motion for relief from judgment makes reference to Michigan Court Rule 6.508(D). There is no indication, however, that the trial court concluded that Petitioner was procedurally barred from asserting the claims in question. Instead, the court addressed in detail the merits of Petitioner's various claims.

*Jackson*, 443 U.S. at 319-26).

When determining whether there exists sufficient evidence to support a conviction the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury. *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). Furthermore, where the record supports conflicting inferences the Court "must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *O'Hara*, 499 F.3d at 499 (quoting *Jackson*, 443 U.S. at 326).

Pursuant to Michigan law in effect during the relevant time period, an individual was guilty of criminal sexual conduct in the first degree if he engaged in sexual penetration of a person "under 13 years of age." Mich. Comp. Laws § 750.520b(1)(a). Sexual penetration was defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." Mich. Comp. Laws § 750.520a.

Pursuant to Michigan law in effect during the relevant time period, an individual was guilty of criminal sexual conduct in the second degree if he engaged in sexual contact with a person who is either: (1) under 13 years of age; or (2) at least 13 years but less than 16 years of age and the person is "a member of the same household as the victim," "related by blood or affinity to the to the fourth degree to the victim," or "is in a position of authority over the victim and. . .uses this authority to coerce the victim to submit." Mich. Comp. Laws § 750.520c.

Amber Hunt testified that Petitioner sexually assaulted her, initially by groping her breasts and later by penetrating her vagina with his fingers. She testified that Petitioner engaged in

this behavior more times than she could count.  This conduct satisfies the definition of second degree and first degree criminal sexual conduct, respectively.  Petitioner's argument is that the jury should have weighed the evidence differently and reached a different result.  As previously noted, the evidence must be viewed in the light most favorable to the prosecution according the benefit of all reasonable inferences to the prosecution.  Moreover, to the extent there exists conflicting evidence, the Court must presume that the jury resolved any such conflicts in favor of the prosecution.  Petitioner is essentially asking this Court to re-weigh the evidence and substitute its judgment for that of the jury.  This is something the Court is simply not permitted to do.

The trial court denied this particular claim as "wholly without merit."  *People v. McNees*, Case No. 07-15493-FC, Order at 7 (Cir. Ct. Allegan Cnty., Dec. 13, 2010).  In light of the authority above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

### B.     Sufficiency of the Charging Document

The Amended Felony Information in this matter alleged that Petitioner committed criminal sexual conduct "on or about 2002-2003" and that he committed child abuse "on or about 2005."[4]  At trial, Amber Hunt testified that Petitioner sexually assaulted her, more times than she could count, between 2000 and 2005.  Petitioner argues that his due process rights were violated

---

[4]  This document is contained within docket entry #21.

because Amber testified that the sexual abuse to which she was subjected took place over a longer period of time than alleged in the indictment. Petitioner further argues that his due process rights were violated because despite the fact that he was charged with only one count of child abuse the evidence presented at trial indicated that he committed child abuse on two occasions. Petitioner argues that he was "severely prejudiced by variances in the evidence."

Petitioner's argument is largely based on his assertion that Amber Hunt was not a credible witness. Specifically, Petitioner asserts that "throughout the proceedings. . .the complainant was inconsistent in all her allegations, and every time she testified, the number of times and dates would change." This argument does not call into question the sufficiency of the document by which criminal charges were initiated, but instead merely calls into question the victim's credibility. As noted above, however, the credibility of the witnesses is not a matter for this Court to address and certainly affords no basis for habeas relief. To the extent Petitioner is challenging the sufficiency of the charging document, the Court is not persuaded.

To satisfy the requirements of due process, a criminal defendant must be afforded "fair notice of criminal charges sufficient to allow [him] to prepare an adequate defense." *Bruce v. Welch*, 572 Fed. Appx. 325, 329 (6th Cir., July 10, 2014) (citation omitted). Accordingly, a charging document must: (1) "set out all of the elements of the charged offense and must give notice to the defendant of the charges he faced" and (2) "be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *Welch*, 572 Fed. Appx. at 329 (citations omitted). The Amended Felony Information by which Petitioner was charged satisfies these requirements.

While the Court understands why Petitioner may have preferred that the charging

document more specifically identify the date(s) on which the alleged conduct occurred, as many courts have concluded, "fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements." *Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir., Jan. 24, 2005) (collecting cases); *Welch*, 572 Fed. Appx. at 330-31 (in the context of sexual assault against a minor, an indictment alleging the unlawful conduct occurred over a period of four years "does not conflict with constitutional notice requirements"). Moreover, Petitioner was not charged with multiple violations of the same offense each count indistinguishable from the others. As the *Konteh* court recognized, if a defendant is charged with "singular counts of each offense," due process is not offended if the charging instrument fails to articulate "exact times and places" of the unlawful conduct. *Konteh*, 395 F.3d at 632. The failure to more specifically articulate "times and places" in the charging document raises due process concerns only if the defendant is charged with multiple counts between which "no distinctions" are made. *Id.* As the *Konteh* court elaborated:

> The problem in this case is not the fact that the prosecution did not provide the defendant with exact times and places. If there had been singular counts of each offense, the lack of particularity would not have presented the same problem. Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made. Valentine was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts. In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8-year-old victim described "typical" abusive behavior by Valentine and then testified that the "typical" abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented.
>
> Given the way Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own. The jury could not have found Valentine guilty of Counts 1-5, but not Counts 6-20. Nor could the jury have found him guilty of Counts 1, 3, 5 and 7, but not the rest. Such a result would be unintelligible,

30

because the criminal counts were not connected to distinguishable incidents. The jury could have found him "not guilty" of some of the counts only if they reached the conclusion that the child victim had overestimated the number of abusive acts. Just as courts should not permit abuse prosecutions to be defeated due to the limited ability of child victims to remember precise temporal details, they should for similar reasons not permit multiple convictions to stand based solely on a child's numerical estimate.

As the forty criminal counts were not anchored to forty distinguishable criminal offenses, Valentine had little ability to defend himself.

*Id.* at 632-33.

The present circumstance is easily distinguishable as Petitioner was, in fact, charged with only "singular counts of each offense." Thus, Petitioner was afforded fair notice of the criminal charges he faced and the conduct on which such were premised. While Petitioner may not have liked that Amber Hunt testified that his unlawful conduct spanned a greater time period than that alleged in the Amended Felony Information, such hardly constitutes a variance. *See United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007) (a variance "occurs when the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment"). The conclusion is the same with respect to Plaintiff's claim that his due process rights were violated because the evidence presented at trial indicated that he committed child abuse on two occasions rather than the single incident alleged in the charging document.

The trial court denied this particular claim. *People v. McNees*, Case No. 07-15493-FC, Order at 7-8 (Cir. Ct. Allegan Cnty., Dec. 13, 2010). In light of the authority above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision

was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**C.**          **Prosecutorial Misconduct**

Petitioner next asserts that statements made by the prosecuting attorney during closing argument deprived him of the right to a fair trial. Specifically, Petitioner argues that the prosecutor attempted to improperly vouch for the victim's credibility and, furthermore, attempted to elicit sympathy for the victim by stating that she "was a special education student." The comments in question were as follows:

> The issue becomes why would Amber Hunt lie about this? Why would Amber Hunt lie about this? She puts herself actually into situations that are pretty uncomfortable. She has to come to court and testify. That is not a comfortable thing to do which you witnessed from several witnesses who either were very emotional by crying, expressing fear by talking very softly, their body language, everything about them indicated that this is not an easy process. To come into a courtroom, see fourteen people they don't know, face them through direct and cross-examination of witnesses that are incredibly personal in their life; about their families, about their lives in regards to sexuality. These are very tough things to do. This is not something that is easy, comforting. It makes you nervous. It makes you cry at times.
>
> Why would Amber Hunt lie because it got her into more trouble. In essence she had to talk to police officers. She had to come to court on multiple appearances. She had to go through the process of cross-examination. In essence she's pretty much lost her former life. At some levels, that's good; at other levels, it destroyed her family. So why would Amber Hunt lie.
>
> The real issue is why do children ever tell. I think Tom Cottrell made that pretty clear. Telling is almost impossible at certain levels because when you tell there is so many things that could happen as a child; as a child, a young girl under the age of sixteen. If she tells she

32

has no control over what happens next.   She doesn't know what's going to happen.   Is she going to go back to the person who abused her?   Is she going to go to some other home?   Is she going to go to a foster home where she doesn't even know who the people are?   She doesn't know what is going to happen if she tells.

*                          *                          *

If everyone was going to have a grand conspiracy, they should have gotten their lies down better.   It's not a grand conspiracy.   It's a situation where this defendant is mean, physically and sexually he abuses children.   He abused his own child sexually and physically. He used her when she was very young, a special education student, who doesn't have a mother around, and who is bouncing from residence to residence and school to school.   Amber Hunt testified. Great manipulator?   Someone who could conspire with this whole group of people, who don't even have contact with one another to testify against the defendant.   The incredibility of that is amazing. The defendant is guilty.   We ask you to find him guilty.   Thank you.

(Trial Transcript, April 2, 2008, 58-59, 76).

Improper vouching occurs "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the government behind that witness."   *Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012). Improper vouching generally occurs when the prosecutor makes "comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony."   *Id.*   However, a prosecutor is permitted to "argu[e] reasonable inferences from the evidence."   *Landis v. Galarneau*, 2012 WL 2044406 at *4 (6th Cir., June 7, 2012) (quoting *United States v. Collins*, 78 F.3d 1021, 1039-1040 (6th Cir. 1996)).   The prosecutor is likewise permitted to "argue that the jury should arrive at a particular conclusion based upon the record evidence."   *Wogenstahl*, 668 F.3d at 329; *see also*, *United States v. Reliford*, 58 F.3d 247, 250-51 (6th Cir. 1995) (so long as he does not improperly vouch for a witness, it is proper for the

prosecutor to review the evidence presented and comment on the strength of the State's case). Finally, where there is conflicting testimony, "it may be reasonable to infer, and accordingly to argue, that one of the two sides is lying." *Collins*, 78 F.3d at 1039-1040.

The prosecuting attorney did not indicate a personal belief regarding the victim's credibility, nor did the prosecutor suggest that she possessed information concerning such that was not presented to the jury. Rather, the prosecutor simply did what she is permitted to do under the law, namely argue to the jury that they should, based on the evidence presented at trial, reach a specific conclusion regarding the victim's credibility. The Court discerns nothing improper in the challenged comments. *See Gillard*, 445 F.3d at 897 (habeas relief warranted on a claim of prosecutorial misconduct only where the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process").

The Court reaches the same conclusion with respect to the prosecutor's comment that the victim was "a special education student."[5] A prosecuting attorney "may not make remarks calculated to incite the passions and prejudices of the jurors." *Baylor v. Renico*, 2009 WL 982212 at *6 (E.D. Mich., Apr. 13, 2009) (citation omitted). A prosecutor runs afoul of this rule when she "calls on the jury's emotions and fears - rather than the evidence - to decide the case." *Id.* (citation omitted). The comment in question was not inaccurate and constituted no more than a passing remark in the larger context of the prosecutor's argument of the facts in evidence which supported her theory of the case. Again, the Court discerns nothing improper in the challenged comments. *See Gillard*, 445 F.3d at 897 (a claim of prosecutorial misconduct merits habeas relief only where the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a

---

[5] Amber Hunt testified that she received "special services" in school. (Trial Transcript, April 1, 2008, 145-46).

denial of due process").

The trial court denied this claim. *People v. McNees*, Case No. 07-15493-FC, Order at 8-10 (Cir. Ct. Allegan Cnty., Dec. 13, 2010). In light of the authority above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.


**D.          Ineffective Assistance of Trial Counsel**

Petitioner asserts that the failure by his trial counsel to obtain the services of "an expert in sexual abuse" constituted ineffective assistance. To prevail on this claim, Petitioner "must make an affirmative showing as to the identity and availability of the witness to testify, the details of what the uncalled witness would have testified to, and that the testimony of the uncalled witness would have produced a different more favorable result at trial." *Gustafson v. Burt*, 2008 WL 4387344 at *12 (E.D. Mich., Sept. 24, 2008) (citation omitted). As the *Gustufson* court observed, "there must be some representation in the record or the petition of the contribution a missing witness could have made, to assess, at a minimum, the prejudice prong of *Strickland*." *Id.* Petitioner offers nothing more than the unsubstantiated conclusion that his attorney should have questioned at trial an "expert in sexual abuse." Petitioner offers neither evidence nor argument as to the content of any such expert's testimony or how such would have advanced his cause. Habeas relief cannot be premised, however, on speculation and unsubstantiated conclusions.

The trial court denied this particular claim. *People v. McNees*, Case No. 07-15493-

FC, Order at 10-12 (Cir. Ct. Allegan Cnty., Dec. 13, 2010).  In light of the authority above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**E.**        **Sentencing Guidelines**

Petitioner argues that the trial judge incorrectly scored two of the relevant offense variables resulting in an inaccurate sentencing guidelines score.  Petitioner also asserts that the trial judge "enhanced" his sentence on the basis of "factual findings not found by the jury beyond a reasonable doubt" in violation of the Supreme Court's holding in *Blakely v. Washington*, 542 U.S. 296 (2004).

First, to the extent that Petitioner asserts that the scoring of the relevant offense variables is inaccurate in violation of Michigan law, such claim is not cognizable.  *See* 28 U.S.C. § 2254(a) (the federal courts can only consider habeas claims alleging "violation of the Constitution, laws, or treaties of the United States"); *Coleman v. Curtin*, 425 Fed. Appx. 483, 484-85 (6th Cir., June 6, 2011) (claims that a state court improperly calculated the relevant offense variables is not cognizable in a federal habeas proceeding).  Petitioner's reliance on *Blakely* is equally unavailing.

In *Blakely v. Washington*, 542 U.S. 296 (2004), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id.* at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).  Petitioner asserts that his sentence

36

violates this rule because the trial judge relied upon facts which were neither admitted nor proven beyond a reasonable doubt when scoring several of the offense variables.

In *Blakely*, the defendant pleaded guilty to second degree kidnaping involving domestic violence and use of a firearm. *Blakely*, 542 U.S. at 298-99. In so doing, Blakely admitted "the elements of second-degree kidnaping and the domestic-violence and firearm allegations, but no other relevant facts." *Id.* at 299. Washington law provided that the "standard range" to which a defendant, convicted of this particular offense, could be sentenced was 49-53 months. However, the sentencing court was permitted to impose a sentence in excess of the "standard range" if it found "substantial and compelling reasons justifying an exceptional sentence." Before imposing an "exceptional sentence," the sentencing court was required to "set forth findings of fact and conclusions of law supporting it." *Id.*

The State recommended that Blakely receive a "standard range" sentence of 49-53 months. *Id.* at 300. The sentencing court rejected this recommendation, however, and, finding that Blakely acted with "deliberate cruelty," imposed an "exceptional" sentence of 90 months. *Id.* at 300-01. As the *Blakely* Court recognized, under Washington law, the court "could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea," but instead could do so only based on the court's additional determination that Blakely acted with "deliberate cruelty." *Id.* at 304. The Court held, therefore, that this sentence violated Blakely's Sixth Amendment right to trial by jury because it was predicated on facts that were neither admitted by Blakely nor found by a jury. *Id.* at 301-05.

The *Blakely* Court, however, made clear that its holding applied only to "determinate-sentencing schemes" such as that employed by the State of Washington. *Id.* at 308-09. The Court

37

recognized that *indeterminate* sentencing schemes do not run afoul of the Constitution because while such schemes may sanction "judicial discretion" in sentencing, they do not accomplish such "at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty." *Id.* at 308-09. As the Court recognized:

> Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence - and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence - and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

*Id.* at 309.

As is well recognized, the State of Michigan employs an indeterminate sentencing scheme. *See, e.g., Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010); *Porter v. Bauman*, 2011 WL 3501814 at *5 (W.D. Mich., Aug. 10, 2011).

Petitioner was convicted of one count of First Degree Criminal Sexual Conduct, one count of Second Degree Criminal Sexual Conduct, and one count of Third Degree Child Abuse. Under Michigan law then in effect, conviction for these offenses was punishable, respectively, by imprisonment for: (1) life or for any term of years; (2) not more than 15 years; and (3) not more than two years. *See* Mich. Comp. Laws §§ 750.520b, 750.520c, 750.136b. Petitioner was sentenced to serve 19½ - 50 years on the first degree criminal sexual conduct conviction, 8-15 years on the second degree criminal sexual conduct conviction, and 199 days for the child abuse conviction. (Sentencing

Transcript, June 20, 2008, 14).  These sentences are entirely consistent with Michigan law.  Thus, when Petitioner committed his crimes he knew that he could possibly receive sentences of this magnitude.  Because Petitioner received a sentence within the range permitted by Michigan law as a result of his convictions, any additional fact-finding in which the trial court may have engaged did not violate Petitioner's rights under *Blakely* or the Sixth Amendment.  Thus, this claim raises no issue on which habeas relief may be granted.


F.            **Separate Trials**

Petitioner next asserts that "the trial court abused its discretion in denying [his request] to sever the first degree criminal sexual conduct and second degree criminal sexual conduct from the third degree child abuse" charges.

As the United States Supreme Court has observed, "[i]mproper joinder does not, in itself, violate the Constitution."  *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986).  Instead, misjoinder offends the Constitution only if it results in "prejudice so great" as to deny a defendant his constitutional right to a fair trial.  *Id.*; *see also*, *Coley v. Bagley*, 706 F.3d 741, 753 (6th Cir. 2013).  Because claims of misjoinder are subject to harmless error analysis, Petitioner must demonstrate that the alleged misjoinder "had substantial and injurious effect or influence in determining the jury's verdict."  *Coley*, 706 F.3d at 753 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

As courts recognize, there exists a "risk of undue prejudice" whenever joinder of charges permits the prosecution to introduce "evidence of other crimes that would otherwise be inadmissible."  *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007).  However, to obtain habeas relief,

Petitioner must demonstrate "*actual* prejudice, not merely the *potential* for prejudice." *Id.* In this respect, it has been observed that "[p]rejudicial joinder is particularly unlikely 'where it would not have been difficult for the jury to compartmentalize and distinguish the evidence concerning the different offenses charged.'" *United States v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007) (citation omitted). Moreover, any error based on alleged misjoinder "is almost always harmless where. . .the trial court issues a careful limiting instruction to the jury on the issue of possible prejudice resulting from the joinder." *Id.*

At the conclusion of the preliminary examination, Petitioner moved to have the child abuse charge resolved in a separate trial. (Preliminary Examination Transcript, November 13, 2007, 34). The judge who presided over the preliminary examination responded by stating:

> The case will be bound over to Circuit Court in one complaint, since we've got all the testimony. But I'll leave it - leave it to you, Mr. Champion, if you want to move to sever that in Circuit Court, you can do so. It might be appropriate to do that in Circuit Court, but that would be up to the judge in Circuit Court to decide.

(Tr. 38).

It does not appear, however, that Petitioner ever renewed in the Circuit Court his motion for severance.

In *United States v. Chavis*, 296 F.3d 450 (6th Cir. 2002), the court was presented with a claim of misjoinder. *Id.* at 453-56. While the court found that the joinder of the two charges in question was improper, the court further found that this error was harmless and, therefore, did not merit relief, in light of the following instruction from the trial judge to the jury:

> The defendant has been charged with more than one crime. The number of charges is in no way evidence of guilt. . .[I]t is your duty to consider separately. . .the evidence that relates to each charge and

> to return a separate verdict for each one.  For each charge, you must
> decide whether the government has presented proof beyond a
> reasonable doubt. . .You decision on one charge, whether it is guilty
> or not guilty, should not influence your decision on any of the other
> charges.

*Id.* at 462.

In the present matter, the trial judge instructed the jury with respect to these issues

as follows:

> The fact the defendant is charged with a crime and is on trial is not
> evidence.  Likewise the fact that he is charged with more than one
> crime is not evidence.
>
> *            *            *
>
> The defendant is charged with three counts, that is with the crimes of
> criminal sexual conduct first degree, criminal sexual conduct second
> degree, and child abuse third degree.  These are separate crimes and
> the prosecutor is charging that the defendant committed them.  You
> must consider each crime separately in light of the evidence in the
> case.  You may find the defendant guilty of all or none of these
> crimes, any combination of these crimes, or not guilty.

(Trial Transcript, April 2, 2008, 78, 84-85).

The trial judge also instructed the jury at least twice that the prosecution had the

burden to prove beyond a reasonable doubt that Petitioner committed each of the crimes in question.

(Tr. 77-78, 84-87).

In the Court's estimation, the aforementioned instructions convey the same substance

as the instructions the *Chavis* court concluded rendered harmless the improper joinder in that

particular case.  In both cases, the jury was instructed: (1) that the number of charges did not

constitute evidence; (2) each charge had to be considered separately; and (3) each charge had to be

proven beyond a reasonable doubt.  Moreover, given the significant difference in the charges related

to the charges of criminal sexual conduct and the child abuse charge, it would not have been difficult for the jury to "compartmentalize and distinguish the evidence concerning the different offenses charged," which as previously noted weighs against a finding that Petitioner suffered unfair prejudice. Thus, even if it is assumed that joinder of the charges in this matter was improper, any such error was harmless in light of the judge's instructions to the jury.

The trial court denied this claim. *People v. McNees*, Case No. 07-15493-FC, Order at 14-15 (Cir. Ct. Allegan Cnty., Dec. 13, 2010). In light of the authority above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

G.        **Ineffective Assistance of Appellate Counsel**

Finally, Petitioner argues that his appellate counsel rendered ineffective assistance by failing to assert on direct appeal the various claims which Petitioner asserted in his post-conviction motion for relief from judgment. However, as discussed herein, these particular claims are without merit. Because Petitioner cannot demonstrate that he was prejudiced by his appellate counsel's allegedly deficient performance his ineffective assistance claim must fail.

The trial court denied this particular claim. *People v. McNees*, Case No. 07-15493-FC, Order at 16 (Cir. Ct. Allegan Cnty., Dec. 13, 2010). In light of the authority above and the evidence of record, the Court concludes that the denial of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision

was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that McNees' petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  May 28, 2015                    /s/ Ellen S. Carmody
                                       ELLEN S. CARMODY
                                       United States Magistrate Judge